## IN THE MATTER OF BUCKINGHAM

Docket No. 74760. Submitted January 9, 1985, at Detroit.—Decided April 15, 1985.

The Michigan Department of Social Services petitioned in the St. Clair Probate Court, Juvenile Division, for an order making Deborah and Adam Buckingham, minors, permanent wards of the court. The respondent father, Jeffrey Buckingham, orally released his parental rights at a pretrial hearing. At a second hearing, the respondent mother, Rebecca Cullen, orally released her parental rights. On August 1, 1983, the probate court, Robert R. Spillard, J., issued an order indicating that respondents had consented to the minor children becoming permanent wards of the court, that respondents' parental rights were terminated, and that the children were committed to the Michigan Department of Social Services for adoptive or placement purposes. On October 31, 1983, respondent mother requested the appointment of counsel to appeal from that order. On November 10, 1983, respondent mother filed a petition for rehearing and the matter was reheard on December 20, 1983. Respondent mother argued that she was misled into believing that she had 90 days within which to withdraw her release and that she did not understandingly, knowingly or voluntarily waive her parental rights. At the conclusion of the rehearing, the probate court reviewed the evidence, determined that respondent mother's release was properly given, and denied the petition to set aside the order of termination. The respondent mother appeals by leave granted. *Held:*

1. A valid release was not given by the respondent mother,

REFERENCES FOR POINTS IN HEADNOTES

[1] 42 Am Jur 2d, Infants §§ 16, 55.

47 Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children § 29.

Who has custody or control of child within terms of penal statutes punishing cruelty or neglect by one having custody or control. 75 ALR3d 933.

[2-5] 2 Am Jur 2d, Adoption § 83.

59 Am Jur 2d, Parent and Child § 5.

Validity of state statute providing for termination of parental rights. 22 ALR4th 774.

therefore, the probate court could not order the voluntary termination of her parental rights. The order terminating respondent mother's parental rights pursuant to the invalid release is reversed.

2. The release of the respondent mother did not comply with the requirements of the Adoption Code.

3. The absence of a duly executed release by respondent mother, the failure of the probate court to find that the release would be in the best interests of the children, and the probate court's failure to distinguish the Adoption Code from the juvenile code mandates a finding that the release of respondent mother was legally inadequate and therefore void.

Reversed.

1. PARENT AND CHILD — JUVENILE CODE — PROBATE COURTS — CHILD NEGLECT.

The juvenile code provides for the placing of a child in the permanent custody of the probate court upon the court's finding of abandonment, desertion or neglect (MCL 712A.19a; MSA 27.3178[598.19a]).

2. ADOPTION — RELINQUISHMENT OF PARENTAL RIGHTS — ADOPTION CODE.

The Adoption Code provides that parents may voluntarily relinquish their parental rights to the Department of Social Services or a child placing agency (MCL 710.22[k], 710.28, subds [1][a] and [5]; MSA 27.3178[555.22][k], 27.3178[555.28], subds [1][a] and [5]).

3. ADOPTION — RELINQUISHMENT OF PARENTAL RIGHTS — RELEASES.

There must be such investigation as the probate court deems proper prior to the execution of a voluntary release of parental rights and the court must fully explain to the parents their legal rights and that the release voluntarily relinquishes permanently their rights to the child; if the child is over five years of age, the court must determine that the child is best served by the execution of the release; such a release is to be accomplished by the execution of a separate instrument before a probate judge or referee and accompanied by a verbatim record of testimony related to the execution of the release (MCL 710.29, subds [1] and [5]; MSA 27.3178[555.29], subds [1] and [5]).

4. ADOPTION — RELINQUISHMENT OF PARENTAL RIGHTS — RELEASES — REHEARINGS.

The Adoption Code provides that the probate court must immedi-

ately issue an order terminating the rights of the parent upon the execution of a voluntary release of parental rights; the court must then issue an order committing the child to the Department of Social Services or the child placing agency to which the release was given; the parent has 20 days after the entry of the order in which to seek a rehearing and the probate court has discretion to grant the rehearing and allow the parent to revoke the release (MCL 710.29, subds [6] and [9], 710.64; MSA 27.3178[555.29], subds [6] and [9], 27.3178[555.64]).

5. ADOPTION — RELINQUISHMENT OF PARENTAL RIGHTS.
   The Department of Social Services or child placing agency assumes the role of the parent once a voluntary release of parental rights is executed; a full investigation occurs and a report of the investigation is forwarded to the court after a petition for adoption has been filed; the department or agency gives consent to the adoption which is accomplished by the execution of a separate instrument; the court then examines the report and, after determining that the consent is genuine, that the person consenting has legal authority to consent and that the best interests of the adoptee will be served by the adoption, the court enters an order terminating the rights of the parent (MCL 710.22[j], 710.24, 710.26, 710.43, subds [1][a][ii], [b], and [d], 710.44[3], 710.46, 710.51[1]; MSA 27.3178[555.22][j], 27.3178[555.24], 27.3178[555.26], 27.3178[555.43], subds [1][a][ii], [b], and [d], 27.3178[555.44][3], 27.3178[555.46], 27.3178[555.51][1]).

*Robert H. Cleland,* Prosecuting Attorney, and *Peter R. George,* Assistant Prosecuting Attorney, for the Department of Social Services.

*Bush, Luce, Henderson, Bankson & Heyboer* (by *Peter Shane Burleigh),* for Rebecca Cullen.

Before: M. J. KELLY, P.J., and GRIBBS and M. R. KNOBLOCK,* JJ.

GRIBBS, J. Respondent mother appeals by leave granted from an order of the probate court, juvenile division, terminating her parental rights. We reverse.

* Circuit judge, sitting on the Court of Appeals by assignment.

The Department of Social Services petitioned the probate court to take permanent custody of respondents' children pursuant to the juvenile code. MCL 712A.1 *et seq.;* MSA 27.3178(598.1) *et seq.* The petition alleged that respondent father had deserted and abandoned the children, MCL 712A.19a(b); MSA 27.3178(598.19a)(b), and that both respondent parents had neglected the children in the past and that there was a reasonable probability of neglect in the future. MCL 712A.19a, subds (e) and (f); MSA 27.3178(598.19a), subds (e) and (f).

## BACKGROUND

On July 22, 1983, at the first pretrial hearing on permanent wardship, the probate court raised the option of a voluntary release of parental rights (apparently under the Adoption Code, MCL 710.21 *et seq.;* MSA 27.3178[555.21] *et seq.)* in lieu of proceedings based on neglect (see MCL 710.28; MSA 27.3178[555.28]):

*"The Court:* \* \* \* Now, you understand, do you not, that if—I will appoint attorneys for either of you if you want to contest this petition. And, if you are indigent I will appoint attorneys for you. On the other hand, you may not want a trial of this matter; you may be quite willing to allow the court to assume permanent jurisdiction over the children; that will be a matter only you can decide.

\*   \*   \*

*"The Court:* \* \* \* Again, you are not on trial but we —understand this, you are not on trial, you are not being charged with child neglect.

*"Mrs. Cullen:* No, I understand.

*"The Court:* That's another section; and I don't think there is any intention on anyone to pursue that. They are looking to release these children so that these

children end up with some opportunities and permanency, all right.

"But this—by the way, don't ever interpret what I am saying being one way or the other. I am not on Mr. Rutowski's [representing the Department of Social Services] side; I am not on your side, I sit in the middle because I have to decide this case if it goes to issue. They are asking you to give up your rights to these children so they can permanently plan for them. That means severing your parental rights, cutting them off and placing the children for adoption."

The court further informed the respondents:

"Now, the other thing is if either one of you gives the waiver, frankly, if you change your mind within 20 days, you may do so. After 20 days it is final." (See MCL 710.64; MSA 27.3178[555.64] of the Adoption Code).

At the hearing, respondent father orally released his parental rights.[1] Respondent mother expressed confusion and reluctance to release her rights to the children. The court then appointed an attorney to represent her and ordered a continuance to give her additional time to decide whether or not she would relinquish her parental rights.

On August 1, 1983, at the second hearing, respondent mother orally released the rights to her children. On the same day, the probate court issued an order on a juvenile code form, indicating that respondents had consented to the minor children becoming permanent wards of the court, that respondents' parental rights were terminated, and that the children were committed to the Michigan Department of Social Services for adoptive or

---

[1] Respondent father does not appeal from the termination of his parental rights.

placement purposes. The order also contained the following language:

"Further it is ordered, That in the event no appeal is taken or request for re-hearing filed within ninety (90) days from the date of this order the minors may be placed for adoption." (See MCL 712A.21; MSA 27.3178[598.21], amended by 1983 PA 105, § 2, of the juvenile code).

On October 31, 1983, respondent mother requested the appointment of counsel to appeal from the order. On November 10, 1983, respondent mother filed a petition for rehearing and the matter was reheard on December 20, 1983. Respondent mother argued that she was misled into believing that she had 90 days within which to withdraw her release. She argued that since the probate court told her at the first hearing that she had 20 days in which to change her mind, and the order issued on the date of the second hearing stated that she had 90 days in which to file an appeal or request a rehearing, she believed that she had 90 days within which to revoke the release. She further argued that she did not understandingly, knowingly or voluntarily waive her parental rights. She contended that she was pressured by the court into relinquishing her parental rights, did not confer with counsel in person prior to the second hearing, and was unaware that she would be unable to see her children in the future. At the conclusion of the rehearing, the probate court reviewed the evidence, determined that respondent mother's release was properly given, and denied the petition to set aside the order of termination.

DISCUSSION

Respondent mother appeals from the probate

court's denial of her petition to set aside the order, raising the same arguments presented at the rehearing. However, we need not address the substance of her claims because we find on different grounds that no valid release was given by respondent mother. Without a valid release, the probate court could not order the voluntary termination of her parental rights.

In the case at bar, the Department of Social Services sought the involuntary termination of respondents' parental rights pursuant to the juvenile code. *In the Matter of Kenneth Jackson, Jr*, 115 Mich App 40, 51; 320 NW2d 285 (1982). The juvenile code provides for the placing of a child in the permanent custody of the court upon the court's finding of abandonment, desertion or neglect, as was alleged in the petition brought by the Department of Social Services. MCL 712A.19a; MSA 27.3178(598.19a). However, what the probate court was apparently seeking to accomplish was a voluntary release of parental rights pursuant to the Adoption Code. MCL 710.28; MSA 27.3178(555.28).

Under the Adoption Code, the parents may voluntarily relinquish their parental rights to the Department of Social Services or a child placing agency. MCL 710.22(k); MSA 27.3178(555.22)(k); MCL 710.28, subds (1)(a) and (5); MSA 27.3178(555.28), subds (1)(a) and (5). Such a release is accomplished by the execution of a separate instrument before a probate judge or referee, accompanied by a verbatim record of testimony related to the execution of the release. MCL 710.29(1); MSA 27.3178(555.29)(1). Prior to the execution of the release, there must be such investigation as the court deems proper, the court must fully explain to the parents their legal rights and that the release voluntarily relinquishes perma-

nently their rights to the child, and, if the child is over five years of age, the court must determine that the child is best served by the execution of the release. MCL 710.29(5); MSA 27.3178(555.29)(5).

Upon the execution of the release by the parent, the court must immediately issue an order terminating the rights of the parent, and if the rights of both parents have been terminated, the court must issue an order committing the child to the department or the child placing agency to which the release was given. MCL 710.29(6); MSA 27.3178(555.29)(6). The parent has 20 days after the entry of the order in which to seek a rehearing. MCL 710.64; MSA 27.3178(555.64); MCL 710.29(9); MSA 27.3178(555.29)(9). The probate court has discretion to grant the rehearing and allow the parent to revoke the release. *Id.; DeBoer v Child & Family Services of Michigan, Inc,* 76 Mich App 641; 257 NW2d 200 (1977); see, also, *In the Matter of Michael Brent Hole,* 102 Mich App 286; 301 NW2d 507 (1980).

Once the release is executed, the department or placing agency assumes the role of the parent. After a petition for adoption has been filed,[2] a full investigation occurs and a report of the investigation is forwarded to the court. MCL 710.46; MSA 27.3178(555.46). The department or agency gives the consent to the adoption,[3] MCL 710.43, subds

[2] See MCL 710.22(j); MSA 27.3178(555.22)(j); MCL 710.24; MSA 27.3178(555.24); MCL 710.26; MSA 27.3178(555.26).

[3] Under the Adoption Code, parents may also *directly* consent to the adoption of their children. MCL 710.43(1)(a); MSA 27.3178(555.43)(1)(a). After such investigation as the court deems proper, and after the court has fully explained to them their rights and the fact that the consent voluntarily relinquishes permanently their rights to the children, the parents may execute a separate instrument giving their consent to the adoption. The consent must be executed before a probate judge or referee and a verbatim record of testimony related to the execution of the consent must be made. MCL

(1)(a)(ii), (b), and (d); MSA 27.3178(555.43), subds (1)(a)(ii), (b), and (d), which is accomplished by the execution of a separate instrument. MCL 710.44(3); MSA 27.3178(555.44)(3). The court then examines the report and, after determining that the consent is genuine, that the person consenting has legal authority to consent, and that the best interests of the adoptee will be served by the adoption, the court enters an order terminating the rights of the parent. MCL 710.51(1); MSA 27.3178(555.51)(1).

In the case at bar, the release of respondent mother did not comply with the requirements of the Adoption Code. The probate court received the *oral* release of respondent mother, then issued an order on a juvenile code form indicating that the respondents had consented to the children becoming permanent wards of the court, committing the children to the Department of Social Services, and terminating the parental rights of the respondents. The order gave respondents 90 days to appeal, the time period (prior to amendment) for appealing involuntary terminations pursuant to the juvenile code. MCL 712A.21; MSA 27.3178(598.21), amended by 1983 PA 105, § 2. Moreover, the court expressly declined to find that the parental releases were in the best interests of the children, who were both over five years of age, as required by MCL 710.29(5); MSA 27.3178(555.29)(5), apparently believing that such a finding was only required in an involuntary termination proceeding:

710.44, subds (1) and (6); MSA 27.3178(555.44), subds (1) and (6). After the court receives a report of investigation, MCL 710.46; MSA 27.3178(555.46), determines the genuineness of a consent to the adoption, the legal authority of the parents to consent, and the best interests of the child, the court enters an order terminating the parental rights of the consenting parents. MCL 710.51(1); MSA 27.3178(555.51)(1).

"*The Court:* I can't guarantee that. The only thing I can guarantee is that these children—let me say there is a shortage of children, all right; and, of course, we screen parents—prospective parents—very carefully, Rebecca, and we do not—we let the best parents—frankly we are very selective—and so they're going to go to a good home. That's the only thing I can guarantee. But, of course, you are the natural mother and you know we have—*apparently the Department of Social Services, not me, I am neutral in this matter; we [Department of Social Services] take a view that think that the child is—deserves better than apparently what it has been getting* and they want to give it to a better home and he, or she or both, may end up with a better opportunity.

\*   \*   \*

"*The Court:* \* \* \* I am not judging you, now, all I am concerned about—I mean, you could be the best parents in the world or the worst parents in the world, *my focal point is the children; what's the best interest of the children. I have not decided that yet, I haven't heard the case.* I mean—the petition would not be drafted by the Department of Social Services if they did not feel like the children would be better off severed—terminated from natural parents \* \* \*." (Emphasis added.)

The absence of a duly executed release by respondent mother, the failure of the probate court to find that the release would be in the best interests of the children, and the probate court's failure to distinguish the Adoption Code from the juvenile code mandates a finding that the release of respondent mother was legally inadequate and therefore void. Thus, the order terminating respondent mother's parental rights pursuant to the invalid release is reversed.

Reversed.