*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BRAUN/WILLIAMS, Minors.

UNPUBLISHED
October 10, 2019

Nos. 348218; 348220
Lenawee Circuit Court
Family Division
LC No. 16-000808-NA

Before: RIORDAN, P.J., and K. F. KELLY and CAMERON, JJ.

PER CURIAM.

In these consolidated appeals, respondent-mother and respondent-father appeal the orders terminating their parental rights to their two minor children. We affirm.

This matter stems from the termination of respondents' parental rights to their two minor children. Respondents' children became temporary court wards under Michigan's Juvenile Code, MCL 712A.1, *et seq.*[1] When efforts toward reunification were unsuccessful, petitioner filed a supplemental petition to terminate respondents' parental rights under MCL 712A.19b(3). The supplemental petition was authorized by the trial court, and termination proceedings commenced. On November 1, 2018, after the termination hearing began but before it concluded, respondents chose to release their parental rights to the children under the Adoption Code, MCL 710.21, *et seq.* Shortly after respondents' rights were terminated, respondents sought to revoke the releases based on assertions that the releases were not knowingly and voluntarily made. The trial court treated respondents' motions as petitions for rehearing and held an evidentiary hearing. In relevant part, respondents testified that two Department of Health and Human Services (DHHS) employees told them on November 1, 2018, that they would be prosecuted for animal abuse and neglect if they refused to voluntarily release their parental rights. Respondents testified that they decided to release their parental rights because of this threat.

---

[1] Based on the limited record that is before us, it appears that respondents' oldest child came within the trial court's jurisdiction in 2016 and that respondents' youngest child came within the trial court's jurisdiction in 2017.

Following the evidentiary hearing and after reviewing the record from the November 1, 2018 hearing, the trial court ruled that respondents could not revoke the releases of their parental rights. More specifically, the trial court held that, because "the release of parental rights on November 1, 2018 was informed by consultation with attorneys and counselors, [ ] both parties were able to understand the proceedings, and there [is] no credible evidence that either parent had been threatened/promised anything to induce his/her release of parental rights." These appeals followed.

On appeal, respondents both argue in a substantially similar manner that they did not knowingly and voluntarily release their parental rights. Because respondents raised these issues in motions before the trial court, the arguments are preserved. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). This Court reviews de novo the issue of the validity of a release of parental rights. See *In re Buckingham*, 141 Mich App 828, 836-837; 368 NW2d 888 (1985). A trial court's decision to deny revocation of a release of parental rights is reviewed for an abuse of discretion. See *In re Burns*, 236 Mich App 291, 292-293; 599 NW2d 783 (1999).

A release of parental rights must comply with the Adoption Code, which provides, in pertinent part:

> A release by a parent or a guardian of the child shall not be executed until after the investigation the court considers proper and until after the judge . . . has fully explained to the parent or guardian the legal rights of the parent or guardian and the fact that the parent or guardian by virtue of the release voluntarily relinquishes permanently his or her rights to the child. . . . [MCL 710.29(7).]

In other words, such a release must be knowingly and voluntarily made. *In re Burns*, 236 Mich App at 292. Once parental rights have been terminated, a parent may file a motion to revoke the release or request rehearing, MCL 710.29(11); MCL 710.64(1); MCR 3.806(A), but a change of heart alone is not grounds to set aside a release that is otherwise knowingly and voluntarily made after proper advice of rights is given by the trial court. *In re Burns*, 236 Mich App at 292-293.

The record of the November 1, 2018 hearing establishes that the trial court properly advised respondents of the rights that they would give up by executing the releases. More specifically, the trial court explained to respondents that the proceedings were "serious" and that, if they executed the releases, their parental rights would be terminated. The trial court provided examples of parental rights, such as the right to custody and control over the minor children and the right to seek visitation with the children. The trial court told respondents that they "[would] have no more control of the children from that of a stranger" if they released their parental rights. The trial court then questioned respondents extensively about their decisions to release their parental rights. In response to the trial court's questioning, respondent-father indicated that he wanted to release his rights "[t]o make sure [the children] are stable and are well taken care of." Respondent mother explained: "Right now until we can get on our own feet ourselves and get ourselves settled and stuff. Kind of what [respondent-father] said with being stable and [the children] have what they need right now that [sic] we can't do right now." Respondents both agreed that releasing their parental rights was in the minor children's best interests. Respondent-

father indicated that he understood the releases would be effective for the rest of the children's lives, and respondents both indicated that they understood that releasing their parental rights was "irreversible." Thus, the trial court did not err in determining that respondents knowingly decided to release their parental rights. See *In re Buckingham*, 141 Mich App at 836-837.

With respect to whether the releases were voluntary, respondents both stated that they were voluntarily giving up their rights to the minor children. Although it appears from the record that respondents did not begin to consider releasing their parental rights until sometime on November 1, 2018, they both agreed that they "had adequate time and adequate counseling to make th[e] decision." Respondents also agreed that the decision to release their rights was their "own well thought out decision," and they denied that they were under the influence of alcohol or drugs. Respondents denied that anyone at DHHS had pressured or threatened them to release their rights. Similarly, respondents testified that no one at DHHS had promised them anything in exchange for the release of their rights.[2]

Although respondents argue on appeal that they were struggling emotionally when they released their rights, there is nothing in the record at the November 1, 2018 hearing to support that respondents' ability to make informed and voluntary decisions was impaired. The fact that respondents were facing involuntary termination of their parental rights under the Juvenile Code does not make their decisions any less voluntary where, as here, respondents were advised on the record and in writing that they were not required to release their parental rights. After receiving this advice, respondents both signed the releases and confirmed on the record that they signed the releases on their own "free will." Importantly, respondent-mother's therapist testified at the rehearing that, although respondent-mother was under "phenomenal pressure" on November 1, 2018, she was "able to reason." Thus, the trial court did not err in determining that respondents' decisions to release their parental rights were voluntarily made. See *In re Buckingham*, 141 Mich App at 836-837.

In sum, because the trial court did not err in determining that respondents' decisions to release their parental rights to the minor children were knowingly and voluntarily made, see *id.*, the trial court's denial of respondents' requests to revoke the releases was not outside the range

---

[2] Respondents testified at the evidentiary hearing that DHHS employees told them that they would not be criminally prosecuted if they released their parental rights to the children. However, the trial court clearly found respondents' testimony to be incredible. We defer to the trial court's determination of credibility and will not resolve credibility anew on appeal. MCR 2.613(C); see *People v Daniels*, 172 Mich App 374, 378; 431 NW2d 846 (1988).

of reasonable and principled outcomes, see *In re MKK*, 286 Mich App 546, 564; 781 NW2d 132 (2009).

Affirmed.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Thomas C. Cameron