IN THE MATTER OF ROBERT P.

1. PARENT AND CHILD—ADOPTION—MOTHER'S RELEASE—PUTATIVE FATHER'S RIGHTS.

Unmarried mother's release of her illegitimate child for adoption did not terminate the rights of the natural father where the father filed, only ten days after the release had been signed, his acknowledgment of paternity and the father, less than two weeks after he acknowledged paternity and within six weeks from the child's birth, filed an action seeking custody of the child.

2. PARENT AND CHILD—CHILD CUSTODY—BEST INTEREST.

The welfare of the child is of paramount concern in custody cases and the superior rights of a parent are enforced only when they accord with the child's best interests.

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 2 Am Jur 2d, Adoption § 26.
10 Am Jur 2d, Bastards § 62 *et seq.*

3. Parent and Child—Child Custody—Best Interests—Natural Parents—Presumptions.

> In a custody dispute between a natural parent and a third party, a presumption exists that a child's best interests lie with his natural parent's exercise of custodial rights, absent a showing of the natural parent's unfitness or his neglect or abandonment of the child.

4. Parent and Child—Adoption—Child Custody—Best Interests—Putative Father's Rights.

> Granting custody to the 16-year-old putative father of an illegitimate child was proper even though the mother had released the child for adoption to a child placement agency where the agency failed to rebut the presumption that the child's best interests lay with her father, the actions of the father and his parents, who would aid in rearing the child, indicated their sincere affection for the child, and the child had not yet been adopted or placed in a familial relationship with adoptive parents.

Appeal from Macomb, Edward J. Gallagher, J. Submitted Division 2 October 13, 1971, at Detroit. (Docket No. 11490.)   Decided October 21, 1971.

Petition by the guardian of Robert P., a minor and legally-acknowledged father of an illegitimate child, for order to show cause why Catholic Social Services for Macomb County should not release custody of the child to him.   Judgment of custody for father. Catholic Social Services appeals.   Affirmed.

*Butler & Martin,* for petitioner.

*Neale, Steeh & Hader,* for Catholic Social Services of Macomb County.

Before: Levin, P. J., and R. B. Burns and J. H. Gillis, JJ.

R. B. Burns, J.   This dispute concerns the custody of a 9–1/2-month-old child born out of wedlock.

Approximately one month after the child's birth the 16-year-old mother released the child for adoption to a nonprofit child placement agency.[1] Under Michigan law, the mother's release of the child to the agency permanently terminated her rights to the child.[2] *Gonzales* v. *Toma* (1951), 330 Mich 35; *In re Mark T.* (1967), 8 Mich App 122.

Exactly ten days subsequent to the mother's release of the child, the 16-year-old putative father acknowledged paternity in probate court. Shortly after this acknowledgment the father filed an order to show cause in circuit court why the child placement agency should not release custody of the child. After several hearings the circuit court awarded custody to the natural father and placed the child in a foster home pending this appeal.

In opposing the circuit court's decision the child placement agency argues that the mother's release terminated the rights of the natural father. This contention cannot be accepted without bringing into question serious constitutional problems concerning due process and equal protection. See *In re Mark T., supra,* p 144.

The constitutional problems need not be considered, however, since the agency's argument is unsupported by statute or case law. The statute in question[3] does not purport to terminate a putative father's natural rights to his child. In fact this Court in *In re Mark T., supra,* specifically refuted such a contention (p 142):

"The appellants [child placement agencies] assume that, since the mother's consent alone is required to authorize adoption of an illegitimate child,

---

[1] The Catholic Social Services of Macomb County, a Michigan nonprofit corporation.

[2] MCLA § 710.3 (Stat Ann 1962 Rev § 27.3178[543]).

[3] Fn 2, *supra*.

by her act alone a dispute concerning the custody of her child is finally resolved. We cannot agree."

If the child placement agency wants a hard and fast rule as to when a putative father relinquishes natural rights to his child it must wait for legislative fiat. Pending such a legislative command we must make decisions in situations such as this on a case to case basis.

In the present case, the putative father acted with expedition. Only ten days had elapsed from the time the mother signed the release until he filed his acknowledgment of paternity.[4] Less than two weeks after he acknowledged the child as his own, he, *via* his guardian, filed this custody action. Only six weeks had passed from the date of the child's birth to the date this custody action was initiated. The father's diligent efforts to secure custody in this case indicates his sincere desire to assert his rights of fatherhood. The current trend of legal thinking focuses on the proposition that since a putative father has statutory duties towards his child born out of wedlock then he should also, assuming he is a fit and proper person, have corresponding rights of custody.[5] This logic has merit, but even more convincing to this Court is the intangible concept of a father's natural love and affection for his child. Such a concept entails rights of the highest order, rights which should not be subject to easy elimina-

---

[4] The father's argument that his rapid acknowledgment pursuant to MCLA § 702.83 (Stat Ann 1971 Cum Supp § 27.3178[153]), which makes a child legitimate from birth, mandates his consent for release pursuant to MCLA § 710.3, *supra*, fn 2, cannot be accepted. Permitting a putative father to invalidate an otherwise valid release by the unwed mother by simply acknowledging paternity, months or perhaps years after the release would have a pernicious effect upon the stability of the adoption laws.

[5] See, *e.g.*, *State in Interest of M* (1970), 25 Utah 2d 101 (476 P 2d 1013).

tion by actions of a third party. It is apparent by the actions of the father in this case that he has diligently attempted to assert and thus preserve his rights.

The more important question, however, has not yet been answered, *i.e.*, given the natural rights of the father is it in the best interests of the child to award custody to the father? The welfare of the child is of paramount concern in custody cases and the superior rights of a parent are enforced only when they accord with the best interests of the child. *In re Ernst* (1964), 373 Mich 337; *Tarr* v. *Pollock* (1970), 25 Mich App 437. The natural parent is favored by a legal presumption:

"In deciding a dispute between a natural parent and a third party it is presumed that the child's best interests lie with his natural parents' exercise of custodial rights absent the showing of the natural parents' unfitness or their neglect or abandonment of the child and the trial court may not indulge in a comparison of the parental home with the proposed alternative."[6]    *Rincon* v. *Rincon* (1970), 29 Mich App 150, 152, 153. See also, *In re Mark T., supra.*

The child placement agency has not rebutted this presumption. The agency's concern over the lack of a viable familial relationship between the father and child is understandable, but the father has not had time to establish such a relationship. If a familial relationship had been established between the child and some adoptive parents we would have a sub-

---

[6] The "Child Custody Act of 1970" (PA 1970, No 91, MCLA § 722.21, *et seq.* [Stat Ann 1971 Cum Supp § 25.312(1), *et seq.*]) became effective shortly after the trial court's award. This excellent piece of legislation sets out guidelines for the trial court in its determination of the "best interests" question and continues the presumption in favor of the natural parent *vis-a-vis* the placement agency.

stantially different question.    But such is not the case before us.

Apparently the child will be reared by the father's parents as well as by the father.    The actions of the father and his parents indicate their sincere affection for the child.

The trial court found that the child's best interest would be served by granting custody to the natural father.    The Child Custody Act (see footnote 6) provides:

"To expedite    *    *    *    a child custody dispute *    *    *    the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue."

Affirmed.    Costs to plaintiff.
All concurred.