DeBOER v CHILD & FAMILY SERVICES OF MICHIGAN, INC.

1. ADOPTION—PARENT AND CHILD—INFANTS—COURTS—CHILD RE-
   LEASES—HEARINGS—RELEASE REVOCATIONS—STATUTES.

   The Michigan Adoption Code authorizes the granting of a hearing
   to a person or persons who executed a child release in the court
   in which the release was filed, to consider whether the release
   should be revoked (MCLA 710.29[9]; MSA 27.3178[555.29] [9]).

2. ADOPTION—PARENT AND CHILD—INFANTS—CHILD RELEASES—RE-
   LEASE REVOCATIONS—STATUTES.

   A release may not be revoked under the Michigan Adoption Code
   where the child has been placed for adoption (MCLA 710.29[9];
   MSA 27.3178[555.29] [9]).

3. ADOPTION—PARENT AND CHILD—INFANTS—CHILD RELEASES—RE-
   LEASE REVOCATIONS—PARENT'S CHANGE OF HEART—PROBATE
   JUDGE'S DISCRETION—REHEARINGS—RELEASE ORDERS—MODIFY
   OR SET ASIDE—STATUTES.

   The Michigan Adoption Code clearly recognizes the possibility
   that a release may be revoked so long as the child has not yet
   been placed for adoption, but the Legislature did not thereby
   intend to bestow such a remedy on "change of heart" natural
   parents as a matter of right; to the contrary, the authority so
   conferred was intended to vest the probate judge with discre-
   tion to grant a rehearing or to modify or set aside the child
   release order (MCLA 710.64; MSA 27.3178[555.64]).

4. ADOPTION—COURTS—PARENT AND CHILD—INFANTS—CHILD RE-
   LEASES—PROBATE JUDGE—DISCRETIONARY ACTIONS—FINDINGS.

   A probate judge's denial of petitions to set aside child adoption
   releases should be affirmed where the judge properly and
   thoroughly explored the petitions, set forth the reasons for his
   discretionary action, and clearly stated his finding.

Appeal from Allegan, Dwight M. Cheever, J.

REFERENCES FOR POINTS IN HEADNOTES
[1-4] 2 Am Jur 2d, Adoption §§ 76–82.
   Annulment or vacation of adoption decree by adopting parent or
   natural parent consenting to adoption. 2 ALR2d 887.

Submitted May 3, 1977, at Grand Rapids. (Docket No. 30257.) Decided July 7, 1977.

Petition by Barbara DeBoer in probate court requesting that the adoption releases of her children be set aside. Petition denied. Petitioner appeals by leave granted. Affirmed.

*Ainsworth & Sheridan,* for petitioner.

*Hann & Wagenveld,* for Child & Family Services of Michigan, Inc.

Before: J. H. GILLIS, P. J., and D. E. HOLBROOK and A. C. MILLER,* JJ.

A. C. MILLER, J. This involves a challenge to the release provisions of the new Michigan Adoption Code, being MCLA 710.21 *et seq.;* MSA 27.3178(555.21), *et seq.*

On January 7, 1976, plaintiff filed a petition with the probate court for the County of Allegan requesting that the releases of her two children, Jonathan Raymond (born August 10, 1972) and Tamella Rashel (born February 3, 1974), both executed on December 22, 1975, be set aside. Following a January 26, 1976, hearing on the matter, Judge Cheever, in an oral opinion, denied her request. Thereafter, on February 20, 1976, plaintiff filed a petition for a rehearing. Following a March 24, 1976, hearing on the question, Judge Cheever, in an oral opinion, again denied plaintiff's request. From that opinion and order, after first unsuccessfully pursuing an appeal to the circuit court, plaintiff now pursues this appeal by leave granted.

The probate judge carefully admonished plaintiff as to the consequences of her action:

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"THE COURT: Now you understand, of course, that once this goes through why it's irreversible. It can't be cancelled. It will be for the rest of your life, for the rest of the childrens' lives, do you understand that?

"MRS. DEBOER: Yes, I do.

"THE COURT: And you would have no rights in the children at all. Do you understand that?

"MRS. DEBOER: Yes.

"THE COURT: You still want to go through with it. Is that right?

"MRS. DEBOER: Yes, I do."

Thereafter, on January 7, 1976, 16 days after she had appeared before Judge Cheever, plaintiff filed a petition requesting that her formerly executed releases be set aside. Relying heavily upon *In re White,* 300 Mich 378; 1 NW2d 579 (1942), plaintiff now asserts that she had and has an absolute right to set aside her releases in view of the fact that she filed her request to do so within the statutory period.

Under former practice, the courts of this jurisdiction consistently treated consents as being inherently different from releases.[1] Whereas consents were generally considered revocable *for any reason* so long as the request to revoke was timely filed, *In re White, supra,* releases were not so treated, *Gonzales v Toma,* 330 Mich 35; 46 NW2d 453 (1951); *In the Matter of Robert P,* 36 Mich App 497; 194 NW2d 18 (1971); *In re Mark T,* 8 Mich App 122; 154 NW2d 27 (1967).[2] Indeed, it was generally considered that "[a] voluntary release

---

[1] Under the present adoption code, consents are governed by MCLA 710.43; MSA 27.3178(555.43) whereas releases are governed by MCLA 710.28; MSA 27.3178(555.28) and MCLA 710.29; MSA 27.3178(555.29).

[2] *But see,* OAG, 1935–1936, No 121, p 317 (October 30, 1935), wherein it was opined that "in the absence of statute, a parent who releases the right to care and custody of his child can later revoke such release and demand return of the child" so long as the adoption procedure has not yet been finalized.

permanently terminate[d] the mother's rights in the child". *In re Mark T, supra,* at 130. In explaining the distinction in treatment, the *Gonzales* Court stated:

"Plaintiff also urges that, if the release was valid, it was within her power to revoke it at any time before conclusion of the adoption proceedings. As authority she cites *In re White,* 300 Mich 378 [1 NW2d 579 (1942)] (138 ALR 1034). In that case the parents had not released the child to a licensed placement agency, and consent of the parents to the adoption was, therefore, required by statute. This Court held that the consent so given by the parents could be withdrawn at any time before the adoption had become final and absolute. In the instant case plaintiff's consent to adoption is not required under the statute, but only the consent of the society to which she released the child. The *White Case* is, therefore, not in point. The requirement of the statute that the probate judge explain to the mother of a child born out of wedlock that by execution of the release she voluntarily terminates permanently her rights to the child, and the provision that consent to adoption of such child shall be filed by the mother, *unless she shall have released the child* to a licensed placement agency, in which case the consent of such agency only is required, are eloquent of a legislative intent that the release shall terminate the parental rights permanently, beyond the power of the parent to revoke." (Emphasis supplied by Court.) at 38–39.

At issue in the instant appeal is the continuing validity of that distinction in light of our Legislature's recent enactment of the new Michigan Adoption Code, being MCLA 710.21 *et seq.;* MSA 27.3178(555.21) *et seq.*

Unlike former statutes, the new Michigan Adoption Code authorizes the granting of a hearing to consider whether a release should be revoked. In

so providing, MCLA 710.29(8); MSA 27.3178(555.29)(8)[3] states:

"Upon petition of the same person or persons who executed the release and of the department or child placing agency to which the child was released, the court with which the release was filed may grant a hearing to consider whether the release should be revoked. A release may not be revoked if the child has been placed for adoption. A verbatim record of testimony related to a petition to revoke a release shall be made."

In delineating the period of time within which such a petition must be filed, the Legislature, in MCLA 710.64; MSA 27.3178(555.64), further provided:

"(1) Upon the filing of a petition in probate court within 20 days after entry of any order under this chapter, and after due notice to all interested parties, the judge of probate *may* grant a rehearing and *may* modify or set aside the order.

"(2) The court shall enter an order with respect to the original hearing or rehearing of contested matters within 20 days after the termination of the hearing or rehearing." (Emphasis supplied.)

Although, as plaintiff argues, the statute clearly recognizes the possibility that a release may be revoked so long as the child which is the subject of that release has not yet been "placed for adoption", the Legislature did not thereby intend to bestow such a remedy on "change of heart" natural parents as a matter of right. Indeed, quite to the contrary, when read in conjunction with § 64, it would appear that the authority so conferred to either permit a rehearing or to grant a request

---

[3] Now MCLA 710.29(9); MSA 27.3178(555.29)(9).

that a release be set aside was intended to vest the resolution of such questions in the sound discretion of the probate judge before whom the matter is raised. Subsection 64 specifically states, "Upon the filing of a petition in probate court * * * the judge of probate * * * *may modify or set aside the order"*. (Emphasis supplied.) Thus, plaintiff erroneously misread the clear language of the statutory provisions quoted above to the contrary.

This raises the question as to whether the probate judge recognized his discretion and properly exercised it. The probate judge recited the salient facts as follows:

"Now, when the mother ran away to Denver she was placing these children. It was an improper and it was an illegal placement. It was with friends and neighbors, I gather, in the trailer court. But here is evidence that in her thinking process was the idea of giving these children up. To me this was the first specific evidence of this entering in her mind. This was * * * before any contact with any social agency, with any social workers, with anybody who could have suggested it. Then she'd also talked about a private placement, she talked to the Leggetts about adopting these children. I believe this was after she returned from Denver. So here it was again in the mother's mind, in her thoughts, in her— how she was conducting her life. It gave the idea to again release these children, place these children for adoption, for the childrens' best interest and perhaps for hers too. And then finally the counselling from Miss Annemarie Schoenborn of the Family Services, and then there was further consideration of releasing the children for adoption. Now, the Court has always thought very highly of Children and Family Services and was happy to hear there was no testimony of any overreaching, any unfair or undue influence.

* * *

"Now, we come down to the release having been given. The only unusual thing about it was the day afterwards

she started having second thoughts when she talked to her mother.

\* \* \*

"There was no change until she talked to her mother. This woman who says she is not going to influence her daughter anymore. That she very obviously started influencing her the minute she heard of the release and there was conversation about 'we' getting an attorney and it still appears .to the Court like Mrs. Groen is the dominant figure here in these legal proceedings."

It further appears that even at the time of the first hearing for revocation, the childrens' mother only wanted to control the placement to relatives and not to actually care for the children herself. Her testimony of January 26, 1976, in part, is as follows:

"Q Now can you tell the Court why you desired on December 22nd to sign this release?
"A I think I was scared. I didn't dare tell my parents that I couldn't take care of both of the kids. So I just went ahead and signed it figuring it would be better for them.
"Q Well who first brought up to you that you should do this?
"A It was my own decision at the time.

\* \* \*

"Q And what's your desire now as far as Tamella is concerned?
"A I would like my brother to have her and raise her.
"Q Do you wish to withdraw, set aside the release that you originally had signed with regard to Tamella, too?
"A Yes.
"Q What is your desire insofar as the children go, Barbara? Do you wish that they be adopted to any specific people or what?
"A Yes, I would like my sister to have Johnny and

raise him and I would like my brother to take Tamella."

After failure of that petition, the grandmother petitioned on March 1, 1976, for rehearing. At that time, the mother for the first time testified that she wanted the children back for care by herself with the assistance of a babysitter and social welfare. She testified March 24, 1976, that she was working as a cocktail waitress evenings and would hire a regular babysitter:

"Q And how are you going to take care of these children again?
"A I am going to be working. Supporting them.
"Q You will be living in Grand Rapids?
"A Yes.
"Q Hiring babysitters in the evening?
"A Yes. That would be the same babysitter with them all the time."

In denying plaintiff's request, the probate judge, with respect to the issue of his discretion, stated:

"Then counsel, on the second grounds for setting this aside, says the Court has judicial discretion. Well, it's nice to say you have innate judicial discretion when you want to do something, when the Court wants to do something. It is very nice to say you don't have that innate judicial discretion when the Court doesn't want it. The Court would here say, let's assume * * * the Court has this discretion to set it aside, and assuming that there is power to set it aside, the Court sees no reason to * * * if the Court was going to consider the interests of the children, the Court would say it was definitely in the best interest of the children to be out of this situation and be placed in another situation where there's not going to be these pressures, these conflicts and the problems that the mother has in

conducting her own life. So the Court sees no reason to exercise any assumed discretion to set this aside."

Admittedly, the judge was concerned with the statutory construction problems, but, nonetheless, he set forth the reasons for his discretionary action and clearly stated his finding.

It is clear that the intent of the Legislature was to give greater finality to the signature of the parent by substituting the *release* label for that of consent. The probate judge properly and thoroughly explored the petitions and denied the same.

Affirmed without costs.