IN THE MATTER OF KOROLY

Docket No. 80079. Submitted May 16, 1985, at Detroit.—Decided
August 19, 1985.

On June 12, 1984, following the filing of a disclaimer of paternity
by the petitioner, Kenneth Mumaw, an order was signed in the
Oakland County Probate Court terminating the parental rights
of petitioner, the putative father, to Lynda M. Koroly, a minor
child born out of wedlock. On June 29, 1984, the probate court
received a letter from the petitioner requesting that the case be
reopened. On August 3, 1984, a rehearing was held on the
termination of petitioner's rights to the baby. The probate
court, Eugene A. Moore, J., interpreted a Juvenile Court Rule
regarding petitions for rehearing, JCR 1969, 9.3, to mean that
the petitioner must show that there has been a change of
circumstances, or that a material fact is different, such that
had the court known it would not have signed the order in the
first place. The probate court concluded that "the mere chang-
ing of mind" by the petitioner subsequent to signing a dis-
claimer of paternity was not sufficient under the statute for the
court to set aside its previous order terminating petitioner's
parental rights. Petitioner apeals from the order denying his

REFERENCES FOR POINTS IN HEADNOTES

[1, 5-7, 9] Am Jur 2d, Parent and Child § 5.
   Validity of state statute providing for termination of parental
   rights. 22 ALR4th 774.
   Standing of foster parent to seek termination rights of foster child's
   natural parents. 21 ALR4th 535.
[2, 8] Am Jur 2d, Adoption §§ 32, 46, 47.
   Mistake or want of understanding as ground for revocation of
   consent to adoption or of agreement releasing infant into adop-
   tion placement agency. 74 ALR3d 489.
   Right of natural parent to withdraw valid consent to adoption of
   child. 74 ALR3d 421.
[3] Am Jur 2d, Adoption §§ 76 *et seq.*
[3, 4, 6, 9] Am Jur 2d, Appeal and Error §§ 134, 187.
   See the annotations in the ALR3d/4th Quick Index under Appeal
   and Error.
[4, 10] Am Jur 2d, Adoption §§ 58, 61, 88.
   See the annotations in the ALR3d/4th Quick Index under Adoption.

petition to set aside the order terminating his parental rights.
*Held:*

1. The proper court rule to follow was PCR 755 (now MCR 5.755). However, under either PCR 755 or JCR 1969, 9.3, the probate court did not abuse its discretion and in its discretion properly determined that petitioner's change of mind was not a sufficient reason for the court to set aside its previous order.

2. A probate court does not err in failing to articulate on the record its application of the factors evaluating the best interests of the child in a rehearing under § 64 of the Michigan Adoption Code sought by one who has previously denied paternity.

3. The probate court's decision is not flawed by petitioner's lack of counsel when he signed the two earlier documents denying paternity. The right to counsel does not extend to releases for adoption, which are voluntary in nature. Petitioner admitted that he freely signed the documents after consulting with an attorney.

Affirmed.

M. J. KELLY, P.J., dissented and would hold that the probate court failed properly to exercise its discretion when, in ruling on petitioner's request for a rehearing, it limited its inquiry to whether petitioner could establish "fraud and/or material facts not discoverable at the time of the original hearing". He believes that, given the significant difference between proceeding under the Juvenile Code and the Adoption Code, it was an improper exercise of discretion for the probate court to apply to voluntary termination cases the limited and narrow standard of review presently reserved for involuntary termination cases. He would hold that, in deciding a request for a rehearing under § 64 of the Adoption Code, the probate court should, at a minimum, consider on the record the best interests of the child or adoptee. He would hold that the probate court must consider the best interests of the child where, as here, the putative father initially waives his parental rights and thus never obtains a hearing on the best interests of the child but timely requests a rehearing under § 64 of the Adoption Code. While agreeing that a change of heart does not guarantee the petitioner the right to revoke his release, he believes that a change of heart should not preclude the petitioner from revoking his release if he can establish that a custody award in his favor would be in the best interests of the child. He would reverse the probate court's order denying petitioner relief and remand for a hearing at which petitioner's ability to provide for the best interests of the child would be the paramount issue.

OPINION OF THE COURT

1. ADOPTION — TERMINATION OF PARENTAL RIGHTS — REHEARINGS — COURT RULES.

A probate judge may grant a rehearing of an order terminating parental rights to a child upon the filing of a petition in probate court within 20 days after entry of the order; after notice to all interested parties, the judge may grant a rehearing and may modify or set aside the order; the probate court may grant such a rehearing only for good cause (MCL 710.64[1]; MSA 27.3178[555.64][1]; MCR 5.755).

2. ADOPTION — VOLUNTARY RELEASE FOR ADOPTION — RELEASE REVOCATION — ADOPTION CODE.

The Michigan Adoption Code clearly recognizes the possibility that a voluntary release for adoption may be revoked so long as the child has not yet been placed for adoption, but the Legislature did not thereby intend to bestow such a remedy as a matter of right on natural parents who have a "change of heart"; to the contrary, the authority so conferred was intended to vest the probate judge with discretion to grant a rehearing or to modify or set aside the child release order (MCL 710.64; MSA 27.3178[555.64]).

3. ADOPTION — PROBATE COURTS — APPEAL.

The standard of review on appeal of an order denying a petition to set aside a voluntary release for adoption is whether the probate court abused its discretion; based on the policy of finality in decisions relating to adoption, appellate courts are reluctant to reverse the probate court's order unless there has been a clear abuse of discretion.

4. ADOPTION — PROBATE COURTS — APPEAL — BEST INTERESTS OF THE CHILD.

A probate court does not err in failing to articulate on the record its application of the factors evaluating the best interests of the child in a rehearing of an order terminating parental rights to a child sought by one who has previously denied paternity of the child; it is proper for the court to look to the factors on the best interests of the child in evaluating cases arising under the Adoption Code section concerning requests for custody by a putative father who has not established a custodial relationship or provided support and determine whether the best interests of the child would be served by granting custody to the putative father seeking custody (MCL 710.39[1], 710.64. MSA 27.3178[555.39][1], 27.3178[555.64]).

5. ADOPTION — VOLUNTARY TERMINATION OF PARENTAL RIGHTS — RIGHT TO COUNSEL.

The right to counsel does not extend to releases for adoption which are voluntary in nature; such a release may be rendered void if it is shown that it was involuntarily executed (MCL 710.29[5]; MSA 27.3178[555.29][5]).

DISSENT BY M. J. KELLY, P.J.

6. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — APPEAL — JUVENILE CODE.

*The Juvenile Code governs the involuntary termination of parental rights where there is a showing, usually after a full evidentiary hearing, of parental abandonment, desertion or neglect; a parent seeking a rehearing of a termination order granted under the code does so with the disadvantage of having already been adjudicated unfit and a narrow and limited standard of evaluating such rehearing requests is, therefore, appropriate (MCL 712A.19a; MSA 27.3178[598.19a]).*

7. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — RIGHT TO JURY — RIGHT TO COUNSEL.

*A parent who defends against a petition for termination of parental rights has the right to request a jury and may request the appointment of counsel (MCL 712A.17[2], and [3]; MSA 27.3178[598.17][2], and [3]).*

8. ADOPTION — ADOPTION CODE — VOLUNTARY RELEASE FOR ADOPTION.

*The Michigan Adoption Code governs the situation in which a parent voluntarily releases his or her minor child for adoption; orders of termination under the code are not preceded by an adjudication of child neglect, abuse or abandonment; the primary focus at every stage of proceeding under the Adoption Code is on the voluntariness of the release.*

9. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — VOLUNTARY RELEASE FOR ADOPTION — INVOLUNTARY TERMINATION OF PARENTAL RIGHTS — APPEAL.

*It is an improper exercise of discretion, given the significant difference between proceedings for involuntary termination of parental rights under the Juvenile Code and proceedings for the voluntary termination of parental rights under the Adoption Code, for a probate court to apply to a voluntary termination case the limited and narrow standard of review presently reserved for involuntary termination cases.*

10. ADOPTION — PROBATE COURTS — REHEARINGS — BEST INTERESTS
    OF CHILD.

*A probate court, in deciding a timely request for a rehearing of
an order for the voluntary termination of parental rights under
the Adoption Code, should, at a minimum, consider on the
record the best interests of the child or adoptee; a probate court
must consider the best interests of the child where a putative
father initially waives his parental rights and thus never
obtains a hearing on the best interests of the child and thereaf-
ter makes a timely request for a rehearing under the Adoption
Code (MCL 710.21a, 710.22, 710.64; MSA 27.3178[555.21a],
27.3178[555.22], 27.3178[555.64]).*

*Maroko & Pollock* (by *Eli Maroko*), for Kenneth
Mumaw.

*Leib & Leib, P.C.* (by *Jeffrey M. Leib*), for Jewish
Family Services.

*Murphy, Kimmel & Stuart* (by *Martin L. Kim-
mel*), Guardian Ad Litem.

Before: M. J. KELLY, P.J., and MACKENZIE and
N. J. KAUFMAN,[*] JJ.

N. J. KAUFMAN, J. Petitioner appeals as of right
from an August 3, 1984, order of Oakland County
Probate Court Judge Eugene Moore denying his
petition to set aside a previous court order termi-
nating the rights of the petitioner as father of a
minor child. Petitioner in this case is the putative
father but had denied paternity of the minor child
on two previous occasions.

Petitioner, Kenneth Mumaw, and Lois Koroly
were involved in a relationship which lasted about
a year, until approximately October, 1983. Both
acknowledged that the relationship included sex-
ual intercourse. In late August or early Septem-
ber, 1983, Miss Koroly informed petitioner that

---

[*] Retired Court of Appeals judge, sitting on the Court of Appeals by
assignment.

she was pregnant. He maintains that at that time she told him that he was not the father but that another man, Bill Hovey, was. Miss Koroly stated that she told petitioner that she was pregnant and that he was the father but that he denied it. She did, however, admit that she had told others, but not petitioner, that there was a possibility that Bill Hovey was indeed the father.

After learning of Miss Koroly's pregnancy, petitioner told her that he did not want anything to do with the child, and after that he made no attempt to contact her and find out why she was naming him as the father. A friend of Miss Koroly's, Ilene Droste, stated that Lois Koroly told her that petitioner was the father.

Miss Koroly contacted appellee, Jewish Family Services, in December, 1983, about giving up her child for adoption. From the beginning, she told them that petitioner was the father of her unborn child. When contacted by Jewish Family Services, petitioner was quite cooperative, and on May 3, 1984, he went to the office and signed a disclaimer of paternity. He knew at that time that Miss Koroly had named him as the father, but he did not believe that he was and testified: "so I freely signed the statement that said I was not the father from that's what I knew."

Miss Koroly's child, Lynda, was born May 4, 1984. Petitioner signed a second disclaimer of paternity on June 11, 1984. This form was entitled "Denial of Interest in Custody of Child by a Putative Father", and petitioner checked the box stating, "I am not the father of the child", as opposed to the box stating, "I am or may be the father of the child and deny any interest in the custody of the child". The next day, Judge Moore signed an order terminating petitioner's rights to the baby,

based on petitioner's filing of a disclaimer of paternity.

On June 15, 1984, petitioner and Teresa Ann Mumaw were married. When they began dating in September, 1983, petitioner told her that Miss Koroly was pregnant but that it was not his child. According to petitioner, his brother informed him at the wedding reception that petitioner was indeed the father of Lois Koroly's baby. When petitioner returned from his honeymoon, he called Jewish Family Services and also wrote a letter to the probate court, received June 29, 1984, requesting that the case be reopened.

On August 3, 1984, a rehearing was held on the termination of petitioner's rights to the baby, during which petitioner, Lois Koroly and others testified. The propriety of the probate judge's denial of the petition to set aside the termination order after that rehearing is the subject of this appeal.

The Michigan Adoption Code provides for rehearings as follows:

"(1) Upon the filing of a petition in probate court within 20 days after entry of any order under this chapter, and after due notice to all interested parties, the judge of probate may grant a rehearing and may modify or set aside the order." MCL 710.64; MSA 27.3178(555.64).

The probate judge found that petitioner had filed his request for rehearing within 20 days as required by the statute, but the judge noted that the adoption statute does not spell out under what circumstances a court shoud modify its previous order. The probate judge, therefore, turned to the Juvenile Court Rules and relied on the provisions for rehearings spelled out in Rule 9:

"Petition. The Court may grant a petition for rehear-

ing, filed in writing while the child is under the juris-
diction of the court. MCL 712A.21; MSA
27.3178(598.21). A petition for rehearing will ordinarily
not be considered unless it presents a matter not previ-
ously presented to the court which, if true, would cause
the court to reconsider the disposition." JCR 1969, 9.3
(now MCR 5.909[C]).

The court interpreted this to mean that the peti-
tioner must show that there has been a change of
circumstances or that a material fact is different
such that, had the court known, it would not have
signed the order in the first place. The court went
on to find that petitioner had demonstrated no
fraud, no misrepresentation, and no reasonable
basis for believing that he was not the father of
the child:

   "A reasonable person here under all these circum-
stances would have done everything possible to find out
whether he was or was not the father, if he had a
genuine interest in this child."

The judge concluded that "the mere changing of
mind" subsequent to signing the document was not
sufficient under the statute for the court to set
aside its previous order.

On appeal, petitioner urges this Court to find
that the probate court abused its discretion in
applying the Juvenile Court Rules and in refusing
to recognize petitioner's change of mind as a suffi-
cient reason to rescind an order.

Petitioner suggests that the proper court rule to
follow was not JCR 1969, 9.3, but rather PCR 755
(now MCR 5.755), which provides:

   "The court may grant a rehearing under MCL
710.64(1); MSA 27.3178(555.64[1]), only for good cause."

Since this rule specifically incorporates the statute

providing for rehearings under the Michigan Adoption Code, we agree with petitioner that this is the proper standard to apply in these cases. However, under either standard, we cannot say that the probate court abused its discretion.

Based on the policy of finality in decisions relating to adoption, courts are reluctant to reverse the probate court's order unless there has been a clear abuse of discretion. *In the Matter of Kenneth Jackson, Jr,* 115 Mich App 40, 55; 320 NW2d 285 (1982). Petitioner suggests that the probate court failed to recognize that its discretion could extend to granting a rehearing based on petitioner's change of mind. The court *did* grant a rehearing, but it properly determined that petitioner's change of mind was not a sufficient reason for the court to set aside its previous order. Although the statute recognizes the possibility that a release may be revoked, the Legislature did not thereby intend to bestow such a remedy as a matter of right on natural parents who have a "change of heart". *DeBoer v Child & Family Services of Michigan, Inc,* 76 Mich App 641, 645; 257 NW2d 200 (1977). Instead, the whole matter is vested in the sound discretion of the probate judge before whom the matter is raised. *Id.,* p 646. The judge in his discretion determined that petitioner's abrupt change of mind after signing two denials of paternity was not a sufficient reason for the court to revoke its order terminating petitioner's rights to the child. This was not an abuse of discretion.

Petitioner and his new wife were both 18 and living with her parents at the time of the rehearing. Petitioner apparently attempted to convince the court that, although he knew Lois Koroly had named him as the father on the release forms, it was not until his brother told him that Lois claimed he was the father that he decided that he

*was* the father. We wonder what petitioner's response would be if a blood test were subsequently done on the child which determined that petitioner was not her biological father. Would he have another change of mind? As far as we know, petitioner has never definitively stated that he is the father of the child. *Cf., In the Matter of Robert P,* 36 Mich App 497; 194 NW2d 18 (1971).

Petitioner also argues that the judge erred by not taking into account the best interests of the child. The Supreme Court has ruled it proper for a trial court to look to the factors on the best interests of the child in evaluating cases arising under § 39(1) of the Adoption Code. *In the Matter of Baby Boy Barlow,* 404 Mich 216, 236; 273 NW2d 35 (1978). However, § 39 specifically authorizes the court to determine whether the best interests of the child would be served by granting custody to the putative father seeking custody. In a rehearing under § 64 sought by one who has previously denied paternity, we cannot say that a probate court errs in failing to articulate on the record its application of the factors evaluating the best interests of the child.

Nor was the probate court's decision flawed by petitioner's lack of counsel when he signed the two earlier documents denying paternity. This Court has determined that the right to counsel does not extend to releases for adoption, which are voluntary in nature. *In re Jackson, supra,* p 51. A release for adoption may be rendered void if it is shown that it was involuntarily executed. MCL 710.29(5); MSA 27.3178(555.29)(5). However, in this case, petitioner admitted that he freely signed both documents, and, in fact, he testified that he had consulted with an attorney before he signed them.

This is a difficult case, but we are in no position

to say that the probate court abused its discretion in refusing to revoke its order terminating petitioner's rights.

Affirmed.

MacKENZIE, J., concurred.

M. J. KELLY, P.J. *(dissenting)*. I respectfully dissent.

I would hold that the probate court failed to properly exercise its discretion when, in ruling on petitioner's request for a rehearing, it limited its inquiry to whether petitioner could establish "fraud and/or material facts not discoverable at the time of the original hearing". I would reverse.

The record presents a petitioner who, at the age of 18, released any rights that he may have had to his putative daughter, Lynda Mae Koroly, born May 4, 1984. He did so pursuant to the Michigan Adoption Code, MCL 710.21 *et seq.;* MSA 27.3178(555.21) *et seq.,* by filing with the probate court a disclaimer of paternity as provided under MCL 710.37(1)(b); MSA 27.3178(555.37)(1)(b). Petitioner's patental rights were terminated by order entered June 12, 1984.

Seventeen days after the order of termination had been entered, petitioner contacted the probate court and asked that the case be reopened. The court proceeded as though petitioner's letter was a request for a rehearing under MCL 710.64(1); MSA 27.3178(555.64)(1), which provides:

"Upon the filing of a petition in probate court within 20 days after entry of any order under this chapter, and after due notice to all interested parties, the judge of probate may grant a rehearing and may modify or set aside the order."

The majority correctly concludes, as did the pro-

bate court, that the decision to grant petitioner's request for a rehearing is within the sound discretion of the probate court and should not be disturbed on appeal absent an abuse of that discretion. *In the Matter of Myers,* 131 Mich App 160, 164; 345 NW2d 663 (1983); *In the Matter of Michael Brent Hole,* 102 Mich App 286, 290, fn 1; 301 NW2d 507 (1980).

The probate court went on to point out, however, what it perceived to be a lack of statutory or appellate authority regarding the factors to be considered in deciding motions for rehearing under MCL 710.64; MSA 27.3178(555.64). At a loss as to what to consider in deciding petitioner's request, the court turned to the Juvenile Code, MCL 712A.1 *et seq.;* MSA 27.3178(598.1) *et seq.,* and applicable court rules. The majority concludes that the probate court's reliance on the standard employed in proceedings under the Juvenile Code constituted a proper exercise of its discretion. I must disagree.

The Juvenile Code governs the involuntary termination of parental rights where there is a showing, usually after a full evidentiary hearing, of parental abandonment, desertion or neglect. MCL 712A.19a; MSA 27.3178(598.19a). See also *In the Matter of Buckingham,* 141 Mich App 828; 368 NW2d 888 (1985). A parent who defends against a petition for involuntary termination has the right to request a jury, MCL 712A.17(2); MSA 27.3178(598.17)(2) and may request appointment of counsel, MCL 712A.17(3); MSA 27.3178(598.17)(3). Thus, a parent seeking the rehearing of a termination order granted under the Juvenile Code does so with the disadvantage of having already been adjudicated unfit. A narrow and limited standard of evaluating such rehearing requests is, therefore, appropriate.

The Michigan Adoption Code, on the other hand, governs the completely different situation in which a parent voluntarily releases his or her minor child for adoption. Orders of termination under the Adoption Code are not preceded by an adjudication of child neglect, abuse or desertion. Rather, the primary focus at every stage of proceedings under the Adoption Code is on the voluntariness of the release. See, for example, MCL 710.29(5); MSA 27.3178(555.29)(5) and MCL 710.51(1); MSA 27.3178(555.51)(1). Given the significant difference between proceedings under each code, I believe that it is an improper exercise of discretion to apply to voluntary termination cases the limited and narrow standard presently reserved for involuntary termination cases.

Moreover, I beleive that the probate court in this case indicated the need for some appellate guidance in deciding these rehearing requests under § 64 of the Michigan Adoption Code. I further believe that this Court should respond to that invitation.

I would hold that, in deciding a § 64 request for rehearing under the Michigan Adoption Code, the probate court should, at a minimum, consider on the record the best interests of the child or adoptee. The Michigan Legislature expressly announced in § 21a of the Adoption Code that one of its primary purposes was to "promote the best interests of each adoptee". MCL 710.21a; MSA 27.3178(555.21a). Section 22 of the Adoption Code sets forth all of those factors which should be considered in determining the best interests of the adoptee or child. MCL 710.22; MSA 27.3178(555.22). It has been established that, where a putative father seeks at the outset to obtain custody of a child with whom he has no custodial or support relationship, the probate court must

consider the best interests of the child in deciding the putative father's claim. *In the Matter of Baby Boy Barlow,* 404 Mich 216, 235-236; 273 NW2d 35 (1978); *In the Matter of Bell,* 138 Mich App 184, 188; 360 NW2d 868 (1984). I would hold the probate court to a similar exercise of discretion where, as here, the putative father initially waives his parental rights and thus never obtains a hearing on the best interests of the child but timely requests rehearing under § 64 of the Adoption Code.

The probate court in this case agreed to accept evidence in response to petitioner's request for a rehearing but limited its scope to that which established fraud or that which was newly discovered. We are thus presented with a probate court record in which there is little, if any, information concerning the petitioner's capacity and disposition to provide Lynda Mae Koroly with love, affection, education, food, clothing or medical care. We have insufficient information regarding the petitioner's moral fitness or mental and physical health. The absence of this information undermines so important a process as terminating parental rights.

I have previously written to uphold the constitutionality of the 20-day rehearing provision under § 64 of the Michigan Adoption Code. *In the Matter of Myers, supra.* In so doing, I recognized that:

"A primary and permissible legislative purpose of the code is to preserve the finality of decisions to release children for adoption. A 20-day limitation on the right of a parent acting without support of the child placing agency to attempt to revoke a previously executed release bears a reasonable relation to this purpose." 131 Mich App 166. (Citations omitted.)

Consistent with that opinion, I believe that the

remedy provided under § 64 should be a meaningful one. The majority concludes and I agree that a change of heart does not guarantee petitioner a right to revoke his release. *DeBoer v Child & Family Services of Michigan, Inc,* 76 Mich App 641; 257 NW2d 200 (1977). Petitioner does not really contend otherwise on appeal. At the same time, however, a change of heart should not preclude petitioner from revoking his release if he can establish that a custody award in his favor would be in the best interests of the child.

I would reverse the probate court's order denying petitioner's request for relief and I would remand for an evidentiary hearing at which petitioner's ability to provide for the best interests of Lynda Mae Koroly would be the paramount issue.