## *In re* BLANKENSHIP

Docket No. 96115. Submitted May 7, 1987, at Lansing. Decided January 19, 1988.

On September 1, 1986, Mary Beth Blankenship gave birth out of wedlock to Heather Marie Blankenship. Prior to the child's birth, both the mother and the child's father, Charles Kindt, had been in contact with Christian Cradle, Inc., and had indicated a desire to place the child for adoption. On September 19, 1986, both parents appeared in the Ingham County Probate Court for the purpose of executing the statutorily required release of their parental rights. The probate court, Donald S. Owens, J., asked the parents if they understood they did not have to release their child for adoption, explained to them their parental rights and asked if they understood they were giving up those rights. Both parents indicated that they understood. The judge then indicated that they would have twenty days after termination of their rights to appeal or request a rehearing, but that, in the absence of an agreement by the placement agency, the releases would not be set aside because of a mere change of mind but would only be set aside on the basis of a legal mistake. After the judge read to the parents the language contained on the release form, they approached the bench to sign the releases; however, the judge noticed some hesitancy on the part of the mother and ordered a thirty-minute recess for the parents to consider their decision. Following the recess, each parent indicated a desire to sign the release and each parent indicated that he or she had not been forced or coerced into signing the release. The releases were signed, the parents' rights were terminated, the child was committed to the custody

REFERENCES

Am Jur 2d, Adoption §§ 24, 43, 44, 46, 60.

Am Jur 2d, Parent and Child § 34.

Mistake or want of understanding as ground for revocation of consent to adoption or of agreement releasing infant to adoption placement agency. 74 ALR3d 489.

Comment Note.—Right of natural parent to withdraw valid consent to adoption of child. 74 ALR3d 421.

Annulment or vacation of adoption decree by adopting parent or natural parent consenting to adoption. 2 ALR2d 887.

of Christian Cradle, Inc., and the child was placed for adoption on the same day. On October 2, 1986, the parents of the child filed a petition for a rehearing, seeking revocation of their previous releases of their parental rights. At the hearing on the petition, the father testified that at the time he signed the petition he was unemployed but that he now had part-time employment. He further testified that, while he understood the nature of the release and had not been coerced, he had talked the mother into signing the release. The mother testified that, while she had understood the nature of the release and the release proceeding, she had been in a state of emotional turmoil and had been drowsy because of the effect of medication at the time of the release proceeding. The probate court denied the petition, based on the exercise of his discretion in the best interests of the child, concluding that petitioners had merely changed their minds. Petitioners appealed.

The Court of Appeals *held:*

1. The probate court did not abuse its discretion in denying the petition to revoke the releases of parental rights, in light of the instability of the relationship between petitioners and consideration of the best interest of the child.

2. There is no right to appointed counsel in a voluntary adoption matter, nor is the probate court obligated to inform the natural parents of a right to privately retained counsel.

3. The probate court made a sufficient investigation prior to accepting the releases.

Affirmed.

J. R. KIRWAN, J., dissented. He would hold that it was an abuse of discretion for the probate court to refuse to set aside the releases of the parents under these circumstances. He would reverse.

1. PARENT AND CHILD — PARENTAL RIGHTS — VOLUNTARY TERMINA-
TION OF PARENTAL RIGHTS — DUE PROCESS — ADOPTION CODE.

Parental rights are a fundamental right protected by the due process clause of the United States Constitution; accordingly, the Michigan Adoption Code provides that a parental release for adoption may not be executed until after the court makes such investigation as it deems proper and has fully explained to the parent his or her legal rights and the voluntary and permanent nature of the release for adoption (MCL 710.29[5]; MSA 27.3178[555.29][5]).

2. ADOPTION — VOLUNTARY TERMINATION OF PARENTAL RIGHTS —
RIGHT TO COUNSEL.

There is no right to appointed counsel at a hearing to determine

whether a parent desires to execute a voluntary release of his or her parental rights pursuant to the Adoption Code, nor is there an obligation for the court to inform a parent of the right to retain private counsel.

3. ADOPTION — VOLUNTARY RELEASE FOR ADOPTION — REVOCATION OF RELEASE.

A probate court has wide discretion to set aside a voluntary release for adoption; however, after the parents have voluntarily released their child for adoption, they do not have an absolute right to revoke the release for a mere change of heart; a voluntary release can be set aside only in the sound exercise of discretion of the probate court, based on a consideration of the best interests of the child (MCL 710.64; MSA 27.3178[555.64]).

4. ADOPTION — VOLUNTARY TERMINATION OF PARENTAL RIGHTS — INVESTIGATION.

The scope and manner of the statutorily mandated investigation prior to acceptance of a voluntary release of parental rights pursuant to the Adoption Code is left to the sound discretion of the probate court.

*Mitchell & Vilella, P.C.* (by *Philip A. Vilella*), for petitioners.

*Schram, Behan & Owen* (by *Steven L. Owen*), for the Christian Cradle, Inc.

Before: WEAVER, P.J., and M. J. KELLY and J. R. KIRWAN,* JJ.

WEAVER, P.J. Petitioners appeal as of right from the probate court's denial of their petition to set aside releases of their parental rights subsequent to the court's entry of an order terminating such rights pursuant to the Michigan Adoption Code, MCL 710.28, 710.29(6); MSA 27.3178(555.28), 27.3178(555.29)(6). We affirm.

I

On September 1, 1986, petitioner Mary Beth

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

Blankenship gave birth out of wedlock to Heather Marie Blankenship. The father, Charles Kindt, is also a petitioner herein. Early in her pregnancy, on February 11, 1986, Mary Beth contacted the director of respondent Christian Cradle, Inc., to choose adoptive parents for the expected child, maintaining that adoption was her only alternative. On April 18, Mary Beth gave Christian Cradle a letter to the adoptive parents, although Christian Cradle did not contact the potential parents until later, in case Mary Beth changed her mind. When Charles Kindt came into the adoption office on June 2, 1986, he discussed his unstable on-and-off relationship with Mary Beth and his feelings about not wanting to release the child, but indicated that Mary Beth insisted on the adoption.

The first scheduled court hearing was canceled because Mary Beth wanted the hearing to occur after the baby was with its adoptive parents. Mary Beth and Charles received extensive counseling from Christian Cradle, but insisted on the adoption except for one occasion. On that occasion they had gotten back together within a week of one of their break-ups which had coincided with their previous visit to Christian Cradle.

At the hearing held on September 19, 1986, Mary Beth and Charles both testified. The probate judge asked them if they understood that they did not have to release their child for adoption and, after explaining to them their parental rights, asked if they understood that they were giving up those rights. To these questions both Mary Beth and Charles answered that they understood. The judge then explained that after termination of their parental rights they could request a rehearing or appeal within twenty days and further explained to Mary Beth, upon noting her quizzical expression, that mere change of mind was not

sufficient to set aside the releases unless Christian Cradle agreed and that the rehearing or appeal would have to be based on a legal mistake. Mary Beth acknowledged her understanding of this explanation.

The judge then read to petitioners the language on the release form. However, as petitioners approached the bench to sign the releases, the judge noticed that Mary Beth seemed hesitant and so granted a half-hour recess in order for petitioners to make a decision. Following the recess, petitioners said they wanted to sign the releases, each answering "no" individually when the judge asked if they had been forced, coerced or threatened to be made to sign the releases. The judge then ordered petitioners' parental rights terminated and the child's commitment to the custody of Christian Cradle for adoption pursuant to MCL 710.41(2); MSA 27.3178(555.41)(2). The child was placed for adoption that same day.

Petitioners petitioned for a rehearing which was held on October 7, 1986, at which time they argued change of circumstances to revoke the releases previously given. Christian Cradle did not join in the petition for revocation. The judge noted that this case would be governed by the revocation of the adoption release provisions found in MCL 710.29(9), 710.64; MSA 27.3178(555.29)(9), 27.3178(555.64) and heard testimony from petitioners and the director of Christian Cradle. Charles maintained that when he signed the release he was unemployed but had subsequently obtained part-time work at Meijers, that he understood the nature of the release and that no one had coerced him into signing it, but that he had been concerned for Mary Beth's well-being after the birth which had involved a Caesarean section and that he had talked Mary Beth into signing the release.

Mary Beth testified that she and Charles were now engaged, that she was in her junior year at Michigan State University with her college expenses being paid by the Veterans Administration, that she had a trust fund worth approximately $5,000, that she had gotten a job which did not conflict with Charles' schedule, that some friends of hers had signed a letter in which they promised to provide support for child care, and that at the time she signed the release she was in a state of emotional turmoil and was taking Tylenol 3 with codeine which made her drowsy. However, she stated that she had understood the proceedings and the effect of the release.

After hearing all the evidence, the probate judge denied petitioners' petition to revoke their releases, concluding that petitioners had merely changed their minds. The judge also found no evidence that the releases had been signed under fraud, duress or undue influence, but that they had been freely and voluntarily given.

II

Petitioners first argue that Mary Beth had given her release involuntarily and that, therefore, the probate judge abused his discretion in denying revocation of the releases. We disagree.

The fundamental nature of parental rights is a liberty protected by the due process clause of the United State Constitution. *In re Kozak,* 92 Mich App 579, 582; 285 NW2d 378 (1979); *Lassiter v Dep't of Social Services of Durham Co, North Carolina,* 452 US 18; 101 S Ct 2153; 68 L Ed 2d 640 (1981), reh den 453 US 927 (1981); *In re Myers,* 131 Mich App 160, 165; 345 NW2d 663 (1983). In Michigan, a parental release is not to be executed "until after such investigation as the court deems

proper" and the court has fully explained to the parent his or her legal rights and the voluntary and permanent nature of the relinquishment. MCL 710.29(5); MSA 27.3178(555.29)(5).

In this case, the parental releases were not executed until after the court's careful investigation and its full explanation to Mary Beth and Charles of their legal rights and the voluntary and permanent nature of relinquishing all parental rights to their child. Even if Mary Beth had been in a state of emotional turmoil at the time of relinquishment, the record is devoid of any evidence that her ability to make an informed, voluntary decision was ever impaired. The judge ordered a special recess to give her more time to think about her decision, after which she decided to sign the papers. Although she may have been on medication, Mary Beth said at the first hearing and again at the rehearing that she understood the proceedings and the effect of the release. We find it difficult to believe her assertion that she was vulnerable to the suggestions of others, since she more than Charles had been the one determined, beginning early in the pregnancy, to give up the child for adoption. Even if Charles had encouraged her to sign the release, by her own admission no one forced her to sign. Because the consequences and final nature of her decision had been explained to her, there is no reason to believe that the release was given other than freely and knowingly. *Myers, supra* at 164; *In re Kenneth Jackson, Jr,* 115 Mich App 40, 51-52; 320 NW2d 285 (1982). Therefore the probate judge did not abuse his discretion in denying petitioners' petition to revoke the releases of their parental rights. *In re Koroly,* 145 Mich App 79, 87; 377 NW2d 346 (1985).

Petitioners' argument that the probate court

should have advised them of a right to seek private counsel is without merit. It is well established that there is no right to appointed counsel in a voluntary adoption matter. *Jackson, supra* at 51-52; *Koroly, supra* at 88. There is no authority for the proposition that the court must recite that there is a right to privately retained counsel. That the right to such recitation does not exist and should not be created is to us self-evident in cases such as this where the petitioners themselves initiated a proceeding in which, unlike a criminal proceeding, the power of the state was not brought against them. See *Lassiter, supra,* 452 US 26.

III

Petitioners next argue that the probate court abused its discretion in failing to investigate fully the reasons for releasing the child and in failing to allow revocation. We disagree.

The probate court had wide discretion to allow revocation after considering all of the evidence. MCL 710.29(9), 710.64(1); MSA 27.3178(555.29)(9), 27.3178(555.64)(1). After petitioners voluntarily released their child for adoption, they did not have an absolute right to revoke the release for a mere change of heart; the release could be set aside only in the sound discretion of the probate judge, based on the best interests of the child. *DeBoer v Child & Family Services of Michigan, Inc,* 76 Mich App 641, 645; 257 NW2d 200 (1977); *Koroly, supra* at 87-88.

After considering the testimony at both hearings, the probate judge denied the requests for revocation based on the exercise of his discretion in light of the best interests of the child, noting that this case presented insufficient evidence for revocation. It does not escape our attention that

during the time of the pregnancy (from at least February of 1986 through September of 1986) the petitioners broke up and got back together, and between the time of signing the release and the time of rehearing (September 19 to October 7, 1986) petitioners again broke up and got back together, sure indicators of an instability in their relationship which was not in the best interests of the child. In the same vein we also find it significant that at oral arguments held in May of 1987, petitioners' counsel indicated that petitioners, though engaged, were not yet married. Although the probate court did not expressly rule on whether there had been a change of circumstance, he did say that all the evidence indicated nothing more than a change of mind. Because the only clear evidence of changed circumstance appears to be that Charles had gotten a part-time job, any change in circumstance was slight. See *Jackson, supra.*

As for petitioners' contention that the probate judge's investigation was inadequate to comply with the statutory requirement of MCL 710.29; MSA 27.3178(555.29), such investigation is left to the sound discretion of the probate court. *Gonzales v Toma,* 330 Mich 35, 38; 46 NW2d 453 (1951). In this case, the probate court investigated thoroughly by asking petitioners if they understood the nature and consequences of a release of parental rights, by suggesting a half-hour recess, and then by questioning petitioners as to whether they were forced, coerced or threatened into signing the releases. The judge was not required to seek expert testimony regarding capacity of the parties to give a release. The probate court did not abuse its discretion.

Affirmed.

M. J. KELLY, J. concurred.

J. R. KIRWAN, J. *(dissenting)*. The authority of a probate judge to set aside or modify a parent's release of parental rights is set forth in MCL 710.64(1); MSA 27.3178(555.64):

> Upon the filing of a petition in probate court within 20 days after entry of any order under this chapter, and after due notice to all interested parties, the judge of probate may grant a rehearing and may modify or set aside the order.

This Court has interpreted this statute in a manner that vests the authority to revoke a release of parental rights in the sound discretion of the trial judge. *DeBoer v Child & Family Services of Michigan, Inc,* 76 Mich App 641; 257 NW2d 200 (1977).

In reviewing a trial judge's exercise of discretion concerning such matters, the importance and seriousness of the decision to legally sever the parent-child relationship cannot be overemphasized. The natural ties that link the parent and child evolve majestically from the mystery of life itself. As the future lives of the new-born child and the parents of that child will be forever affected by the court's ruling, the decision of the trial judge is truly of extraordinary importance. While it is true that there must be some finality in the release of parental rights, a brief delay in the finality of that decision should be countenanced if the interests of the parties and child are served. It follows that, when parents petition for a rehearing, the court should view the facts made known at the rehearing in a light supporting and even encouraging the idea that parental rights are fundamental and that a child's best interests are ordinarily served

when the natural parents will be the guiding influence in the life and growth of the child.

Therefore, a trial judge in considering a parent's petition to revoke a parental release should liberally grant such petition if timely made. The legal reasoning that allows a defendant in a criminal case to withdraw his plea of guilty before sentencing is applicable in cases of this nature. Our Supreme Court has consistently held that even though a plea has been voluntarily and understandably made judges should exercise their discretion liberally in granting a defendant's petition to withdraw a plea of guilty prior to sentencing. See *People v Bencheck,* 360 Mich 430, 433; 104 NW2d 191 (1960), wherein the Court, quoting from *People v Banning,* 329 Mich 1; 44 NW2d 841 (1950), stated:

> The rationale behind these cases is apparent. The right to trial by jury in criminal cases is a substantial constitutional right, as are the attendant rights of confrontation, cross-examination, et cetera. While these rights may be waived by the defendant, the law has erected many safeguards to protect him against his own ignorance, or folly, and against the pressures that might be applied by others. In the case in which the defendant has pleaded guilty, and then desires to avail himself of his constitutional guaranties, the law will not punish him for his indiscretion.

As parental rights are both substantial and fundamental, the law should be equally protective of such rights and require the trial judges to liberally grant petitions to revoke a parental release if made within the time allowed by law.

When such petitions are timely made, they are made prior to the creation of any parental rights in prospective adoptive parents. As such, the real

parties in interest at the time of the rehearing are
the State of Michigan and the parents of the child.
The state's interest is to see that the child's basic
needs are met. The parents' interest encompasses
their obligation to provide for the many needs of
their child. The interests of the state and the
parents are therefore not necessarily in conflict;
and the judge's revocation of a parental release, if
done within the time allowed by law, may very
well serve the interests of both the parents and.
the state. Further, as no rights of prospective
adoptive parents have accrued at the time of the
petition, a strong presumption must exist that at
rehearing the child's best interest would be served
by allowing the parents to exercise their parental
rights and obligations.

In the instant case the parents' request to re-
voke the release they had signed was timely made.
The parents made their request eighteen days
after the release was signed, which was within the
twenty-day period allowed by law. MCL 710.64(1);
MSA 27.3178(555.64)(1).

At the hearing to consider the petition to revoke
the parental release, evidence revealed that the
parents when they signed the release were uncer-
tain whether or not they would be financially able
to support the new-born child due to the father's
unemployment. Yet, when the parents made their
request to revoke, the father had obtained a part-
time job and the mother's employment did not
conflict with the employment of the father. Fur-
ther, several friends of the mother had signed a
letter indicating their willingness to provide sup-
port for child care. Additionally, the mother stated
that when she signed the release she was in a
"sort of fog." She claimed that she was recovering
from surgery and taking medication that caused
her emotional turmoil and made her vulnerable to

the suggestions of others. Further, the father testified that he had talked the mother into signing the release even though she was reluctant to do so.

These facts and the fact that the parents at the time of the rehearing were united in their desire to keep the child, when considered in the light that petitions to revoke a parental release should be liberally granted when timely made, constituted sufficient good cause and change of circumstances to require the granting of the petition, and the trial judge's refusal to do so was therefore an abuse of discretion.

I would reverse.