IN THE MATTER OF NORD

Docket No. 87407. Submitted February 13, 1986, at Lansing.—Decided March 17, 1986.

Christina M. and Douglas H. Linville, half-sister and brother-in-law of Tina L. Jordan, petitioned the Eaton Probate Court to adopt Nichole Nord, Tina Jordan's minor daughter. Tina Jordan consented to the adoption and the court granted the petition, terminating Tina Jordan's parental rights. Tina Jordan moved on the grounds of fraud to set aside her consent and the orders terminating her parental rights and allowing the adoption and the court, Robert C. Ballard, J., denied the motion. Tina Jordan appealed. *Held:*

Review of an order denying a revocation of a consent to adoption is for an abuse of discretion. For respondent to establish fraud it must appear that: (1) the petitioner made a material representation; (2) it was false; (3) when they made it they knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) they made it with the intention that it should be acted upon by the respondent; (5) the respondent acted in reliance upon it; and (6) she thereby suffered injury. The court did not err in holding that Tina Jordan gave a knowing and voluntary consent to adoption and in denying the motion.

Affirmed.

1. ADOPTION — CONSENT TO ADOPTION — ADOPTION CODE — APPEAL — RELIEF FROM JUDGMENT.

Review of an order denying a revocation of a consent to adoption is for an abuse of discretion (MCL 710.43; MSA 27.3178[555.43]).

2. FRAUD — ELEMENTS OF ACTION.

The general rule is that to establish fraud it must appear that: (1) the defendant made a material representation; (2) it was false; (3) when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive

REFERENCES

Am Jur 2d, Adoption §§ 46, 47.

See the annotations in the ALR3d/4th Quick Index under Adoption of Children.

assertion; (4) he made it with the intention that it would be acted upon by the plaintiff; (5) the plaintiff acted in reliance upon it; and (6) he thereby suffered injury.

*Roger L. Montgomery,* for Christina and Douglas Linville.

*Hosler & Ray, P.C.* (by *Jeffrey P. Ray),* for appellant Tina L. Jordan.

Before: R. B. BURNS, P.J., and BRONSON and J. C. TIMMS,* JJ.

R. B. BURNS, P.J. Respondent appeals from the order of the Eaton County Probate Court denying her motion to set aside her consent to adoption and the orders of termination of her parental rights and adoption of her daughter Nichole.

Respondent lived with petitioners Linville, her half-sister and brother-in-law, for many years of her life because the women's mother failed to provide a stable home. When respondent turned 18, she moved in with a boyfriend, became pregnant, and gave birth to Nichole on January 17, 1979. Three months following Nichole's birth, respondent moved into the Linville residence, staying approximately 11 months. She then took up residence with another boyfriend until the fall of 1982, when she moved back in with the Linvilles. In the following months, respondent moved in and out of the Linville residence and the residences of her mother and various boyfriends. Petitioners cared for Nichole much of the time.

In June, 1983, when respondent was residing outside of the Linville home, she asked whether she could once again leave Nichole with petitioners while she went water-skiing with a boyfriend. Chris Linville stated that she would take Nichole,

* Circuit judge, sitting on the Court of Appeals by assignment.

but that respondent should leave Nichole with petitioners permanently. Respondent brought Nichole to the Linville residence with her clothing, toys, and other necessities, and did not come back to pick up Nichole that weekend. Nichole resided with petitioners, but respondent occasionally visited.

On August 26, 1983, following the water-skiing incident, petitioners filed a petition for the adoption of Nichole. Respondent stated that she did not receive a copy of the petition for adoption because it was sent to the wrong address. Chris Linville testified that she notified respondent of the intent to adopt Nichole and that respondent had obtained Nichole's birth certificate, which was necessary for the proceedings.

Respondent scheduled an appointment in the Ingham County Probate Court for the purpose of giving her consent to Nichole's adoption. On November 23, 1983, she appeared before referee Douglas Slade for the consent but, after Slade explained alternatives to adoption and the fact that no side agreements between petitioners and herself would be enforceable, respondent decided not to give her consent. She telephoned Chris Linville and told her that she had been unable to give her consent. When respondent suggested a custody arrangement as opposed to adoption, Chris stated that they desired the permanence of adoption.

Respondent subsequently gave her consent to adoption before Eaton County Probate Court Judge Robert Ballard on January 3, 1984. According to respondent, Chris told her that she could not appear in Ingham County, but was required to appear in Eaton County. According to Chris, she suggested Eaton County to respondent because it was closer, not so busy, and because the Linvilles

resided in Eaton County. At the January 3, 1984, consent proceeding, Judge Ballard informed respondent of the permanency of adoption and the fact that she was relinquishing all her parental rights to Nichole by signing the consent form. He also emphasized the fact that respondent did not have to sign the consent unless she desired to do so. Respondent signed the consent and an order was entered the same day terminating her parental rights in Nichole. On February 7, 1984, the adoption was finalized and an order of adoption was filed.

Respondent thereafter filed a petition to set aside her consent, the order terminating her parental rights, and the adoption. The petition alleged that her consent had been obtained by fraud. Following a two-day hearing, during which several witnesses testified, the probate court denied respondent's petition. She now appeals and we affirm.

We first must determine the appropriate standard of review for this case, which appears to present a question of first impression. The Michigan Adoption Code, MCL 710.21 *et seq.;* MSA 27.3178(555.21) *et seq.,* provides for two basic methods by which biological parents may agree to their child's being placed for adoption. The child may be *released* for adoption under § 28[1] and related sections, or the parents may *consent* to the adoption under § 43.[2]

The code provides in detail the circumstances under which release or consent is the appropriate method to employ. The fundamental distinction is that, under a release for adoption, the release is given to a child placement agency or to the De-

[1] MCL 710.28; MSA 27.3178(555.28).

[2] MCL 710.43; MSA 27.3178(555.43).

partment of Social Services,[3] while a consent to adoption is utilized where the prospective adoptive parent is related to the child within four degrees of affinity or consanguinity or is the child's stepparent.[4] The two procedures, although distinct, are similar in nature and purpose.

Because of the similarity between release and consent, we look to the standard of review in release cases to determine the appropriate standard in consent cases. In *In the Matter of Myers,* 131 Mich App 160, 164; 345 NW2d 663 (1983), the Court held that, in an appeal from a probate court's order denying a petition for a hearing to revoke a release, this Court would review that decision for an abuse of discretion. We believe that this is the appropriate standard to apply in reviews of orders denying a revocation of consent to an adoption as well.

Respondent claims that the adoption should be set aside as her consent to the adoption was procured through fraud. To establish fraud, respondent is required to show: (1) that petitioners made a material representation; (2) that it was false; (3) that when they made it they knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that they made it with the intention that respondent act upon it; (5) that respondent acted in reliance upon it; and (6) that respondent suffered injury. *Moffit v Sederlund,* 145 Mich App 1; 378 NW2d 491 (1985). The absence of any one of these factors is fatal to a fraud claim. *Id.*

Respondent alleges various instances of fraud upon either herself or the trial court. A detailed analysis of each of these claims, in addition to

---

[3] MCL 710.28(5); MSA 27.3178(555.28)(5).

[4] MCL 710.43, subds (7) and (8); MSA 27.3178(555.43), subds (7) and (8). Consent is also applicable under certain other circumstances.

being prohibitively long, is unnecessary as the record below establishes that respondent gave a knowing and voluntary consent. At the consent hearing in Eaton County, respondent gave the following sworn testimony:

"*Q. [The Court]* And, you understand that you don't have to sign this uh consent, unless you desire to do so, but if you do sign it, by virtue of signing it, you voluntarily relinquish permanently, all your parental rights to this child, for adoptive placement, with Douglas H. and Christina M. Linville. Do you understand that?

"*A. [Respondent]* Yes, I do.

*Q.* Now, that means that you could never inherit from this child, the child could never inherit from you, you'd have nothing, if this goes through, you would have nothing further to say about how the child was raised or in other words, you would be out of the picture. Do you understand that?

"*A.* Yes, I do.

"*Q.* And, then the child's name would be, last name would be changed, to Linville, and you understand all of these things? Is that right?

"*A.* Yes, I do.

"*Q.* And, you understand, that the fact that you are here today, doesn't mean, necessarily, that you have to sign this and that it has to be voluntary, on your part and no one is forcing you to do this, or anything?

"*A.* Yes, I understand.

"*Q.* * * * Now would you raise your right hand, again? Do you swear that this consent that you have just given, is voluntary on your part and you do consent to this adoption?

"*A.* Yes, I do."

A review of the record makes it clear that the trial court did not arbitrarily or capriciously reach its decision to deny respondent's petition to set aside the consent. Rather, Judge Ballard devoted two days of hearings and listened to the argu-

ments of counsel before rendering a thoughtful and well reasoned opinion. The Supreme Court has explained what constitutes an abuse of discretion:

"[A]n abuse of discretion involves far more than a difference in judicial opinion between the trial and appellate courts. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Spalding v Spalding,* 355 Mich 382, 384-385; 94 NW2d 810 (1959).

Our review of the record reveals no abuse of discretion. Rather, the time has come for finality to this adoption. See *In the Matter of Koroly,* 145 Mich App 79, 87; 377 NW2d 346 (1985).

Affirmed. Costs to appellees.