## In re ROBINS

Docket No. 90275. Submitted June 10, 1986, at Grand Rapids. Decided July 21, 1986.

Following the death of his parents, three couples filed petitions in Oceana Probate Court seeking guardianship of Jayson Robins: Thomas and Joyce Plumhoff, brother-in-law and sister of Jayson's father, Robert and Norma Weselo, a cousin of Jayson's father and his wife, and Mr. and Mrs. Willard A. Vincent, brother and sister-in-law of Jayson's mother. The probate court, Gerald T. Graham, J., granted the Weselos' petition for guardianship. Thereafter, both the Weselos and the Plumhoffs petitioned for adoption of Jayson. The probate court, Thomas J. Eggleston, J., found that the petitioning couples were equally able to provide a proper environment for Jayson and ultimately decided to grant the Weselos' petition on the basis that Jayson had been living with the Weselos for almost three years. The court denied the Plumhoffs' petition and granted to the Weselos, as guardians of Jayson, authority to execute a consent to adopt. The Plumhoffs appealed, claiming that it was error for the probate court to permit the Weselos, as guardians, to consent to the adoption because they, as adopting parents, were not related within the fourth degree of consanguinity and thus there could only be a release to a child placement agency for adoption and that the probate court abused its discretion in granting the Weselos' petitions while denying the Plumhoffs' petition. *Held:*

1. While an adopting parent must be within the fourth degree of consanguinity if the adoption is to be made directly on the natural parents' consent rather than by release to a child placement agency, the statutory scheme does not require that there be any blood relationship between the adopting

REFERENCES

Am Jur 2d, Adoption §§ 23-47.

Am Jur 2d, Appeal and Error § 134.

Natural parent's parental rights as affected by consent to child's adoption by other natural parent. 37 ALR4th 724.

Adoption of child in absence of statutorial required consent of public or private agency or institution. 83 ALR3d 373.

See also the annotations in the ALR3d/4th Quick Index under Appeal and Error.

parent and the adoptee before a guardian can consent to an adoption where the probate court had authorized the guardian to consent to the adoption.

2. Since the record supports the probate court's finding that the couples were equally qualified, the probate court's choice between the equally suitable couples cannot be said to be an abuse of discretion.

Affirmed.

1. ADOPTION — CONSENT TO ADOPTION — GUARDIANS.

A guardian of a minor child, where authorized by the probate court to execute a consent to adoption, can consent to adoption of the child even though the adoptive parents are not related within the fourth degree of consanguinity (MCL 710.43, subds [1][e] and [5]; MSA 27.3178[555.43], subds [1][e] and [5]).

2. ADOPTION — APPEAL — STANDARD OF REVIEW.

A probate judge has discretion to grant or deny an adoption petition; the Court of Appeals will not substitute its judgment for that of the probate court unless there is a clear abuse of discretion.

*Shirley J. Burgoyne,* for the Plumhoffs.

*Potuznik, Spaniola, Wilson & Anderson, P.C.* (by *Denis V. Potuznik).,* for the Weselos.

Before: R. B. BURNS, P.J., and GRIBBS and R. I. COOPER,* JJ.

R. B. BURNS, P.J. This case has its roots in the tragic deaths of the biological parents of Jayson Robins. Jayson's parents, L. V. and Penny Robins, were murdered in October, 1982, by Clifford Robins, L. V.'s fifteen-year-old son by a previous marriage. Also orphaned by the murder was Jayson's fifteen-year-old sister, Carrie.[1]

Following the Robinses' deaths, petitions for guardianship over Jayson and Carrie were filed by Thomas and Joyce Plumhoff, L. V.'s sister and brother-in-law, Robert and Norma Weselo, L. V.'s

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Carrie was Penny's daughter by a previous marriage, but had been adopted by L. V. following his marriage to Penny.

cousins,[2] and Mr. and Mrs. Willard A. Vincent, Penny's brother and sister-in-law. The court subsequently granted the Weselos' petition. Thereafter, both the Weselos and the Plumhoffs sought to adopt Jayson. Ultimately, the probate court granted the Weselos' petition for adoption. The Plumhoffs now appeal to this Court.

The first issue for our consideration is whether the probate court erred in permitting the Weselos, as Jayson's guardians, to consent to the adoption where they were not related within four degrees of consanguinity. The Plumhoffs argue that, since Jayson was not related within the fourth degree of consanguinity, the Weselos, as guardians, could not consent to the adoption under MCL 710.43; MSA 27.3178(555.43). Rather, the Plumhoffs suggest that the Weselos can only release Jason for adoption, either to a child placement agency or to the Department of Social Services, under MCL 710.28; MSA 27.3178(555.28).

Adoption is governed solely by statute. *In re Kyung Won Kim,* 72 Mich App 85, 88; 249 NW2d 305 (1976). The distinction between consent and release was briefly discussed in *In re Nord,* 149 Mich App 817, 820; 386 NW2d 694 (1986):

> The Michigan Adoption Code, MCL 710.21 *et seq.;* MSA 27.3178(555.21) *et seq.,* provides for two basic methods by which biological parents may agree to their child's being placed for adoption. The child may be *released* for adoption under § 28 and related sections, or the parents may *consent* to the adoption under § 43.
>
> The code provides in detail the circumstances under which release or consent is the appropriate method to employ. The fundamental distinction is that, under a release for adoption, the release is given to a child placement agency or to the De-

---

[2] Robert and L. V. were first cousins.

partment of Social Services, while a consent to adoption is utilized where the prospective adoptive parent is related to the child within four degrees of affinity or consanguinity or is the child's step-parent. The two procedures, although distinct, are similar in nature and purpose. [Footnotes omitted, emphasis in original.]

MCL 710.43, subds (1)(a)(v) and (7); MSA 27.3178(555.43), subds (1)(a)(v) and 7, provides that a *parent* may not consent to an adoption unless the child is related to the petitioner within the fourth degree of consanguinity. Otherwise, as noted in *Nord,* the parent can only execute a release for adoption.

However, contrary to the Plumhoffs' argument, no such restriction applies to the execution of a consent by a guardian. MCL 710.43(1)(e); MSA 27.3178(555.43)(1)(e) requires a child's guardian, if any, to consent. The only restriction on the child's guardian is that the guardian must be authorized to execute the consent by the court which appointed the guardian. MCL 710.43(5); MSA 27.3178(555.43)(5).

In this case, there is no dispute that the Weselos, as Jayson's first cousins once removed, were related to him in the fifth degree of consanguinity.[3] However, as noted above, the Weselos were only required to obtain the authorization of the probate court, which they apparently did.[4]

We next turn to the question of whether the probate judge abused his discretion in granting the

[3] See the table of consanguinity that is provided in the commentary to CJI 20:2:06. Under that table, Jayson would be the "Person Deceased" and the Weselos would be the "First Cousins Once Removed" in the fourth column.

[4] This is consistent with this author's opinion in *Nord, supra. Nord* considered a situation where it was the parent who executed the consent, while the case at bar falls within the "other circumstances" referred to in footnote 4 of the *Nord* opinion.

Weselos' adoption petition and denying the plaintiffs' petition. A probate judge has discretion to grant or deny an adoption petition and this Court will not substitute its judgment for the trial court's unless there has been a clear abuse of that discretion. *In re Kyung Won Kim, supra.*

In his opinion, the probate judge stated:

> In several of the factors, either family could provide equally for the child. Both families exhibit love and affection for the child and are able to give him guidance, education, and foster religion. Both families are able to provide him with material needs. Both families possess moral fitness, mental, and physical health.

In our review of this matter, we concur with the probate court that either couple would present an appropriate choice to adopt Jayson. Since the trial judge could reasonably have granted either petition, it was not an abuse of discretion to grant the Weselos' petition.

Affirmed. No costs.